IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| ROGER and ELIZABETH COTE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | NO. 1:18-cv-00052 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| NEWREZ, LLC d/b/a/ SHELLPOINT | ) | MAGISTRATE JUDGE FRENSLEY |
| MORTGAGE SERVICING, and | ) | |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is a motion for judgment on the pleadings filed by Defendants NewRez, LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and Federal National Mortgage Association ("Fannie Mae"). (Doc. Nos. 29, 30). Plaintiffs filed a response (Doc. No. 33) and Defendants filed a reply (Doc. No. 36). For the following reasons, Defendants' motion will be **DENIED**.

### I.  BACKGROUND

The claims in this case arise out of the March 1, 2018, foreclosure sale of property owned by Plaintiffs Roger and Elizabeth Cote. Except as otherwise stated,[1] the following facts are as alleged in the Complaint (Doc. No. 1-2.).

In August 2005, Plaintiff Roger Cote obtained a mortgage loan from Suntrust Mortgage, Inc. in the amount of $91,000 for the purchase of real property. (*Id*. ¶¶ 6, 8.) Defendant Federal

---

[1] The exact dates are not agreed to by the parties. The dates used by Plaintiffs in the Complaint do not match exactly with the dates alleged by Defendants and indicated on the exhibits attached to the answer. (Doc. No. 9). However, except as discussed below, the Court does not find the precise dates dispositive, and will refer to the dates pled in the Complaint.

National Mortgage Association ("Fannie Mae") acquired the loan in October 2005 and remained the owner of the loan at the time of the foreclosure sale on March 1, 2018. (*Id*. ¶ 9.) Ditech Financial, LLC ("Ditech"), Shellpoint's predecessor, began servicing the loan for Fannie Mae in May 2008, and was the mortgage servicer at all times relevant to this action. (*Id*., ¶ 10.)

Plaintiffs obtained modification of the loan in 2011 and again in 2016. (*Id*., ¶ 11). In September 2017, Plaintiffs contacted Ditech requesting another loan modification and filed an application in late December 2017. (*Id*., ¶ 14). On or about January 11, 2018, Ditech informed Plaintiffs that their loss mitigation application was incomplete because three additional documents were needed. Plaintiffs allege they provided the information to Ditech the same day. (*Id*., ¶¶ 19- 21).

On January 15, 2018, Ditech appointed Wilson and Associates, PLLC, as successor trustee. (*Id*., ¶ 24.) On January 30, 2018, Wilson and Associates sent Plaintiffs a letter and notice informing them that a foreclosure sale of their property was scheduled for March 1, 2018. (*Id*., ¶ 25.) On or about February 2, 2018, after receiving the letter, Mrs. Cote called Ditech about the foreclosure sale and was told "not to worry about the foreclosure sale date because it would be postponed until the Cotes' loss mitigation application was properly evaluated." (*Id*., ¶ 26.) A few days later, a Ditech representative told Mrs. Cote that her application was in order and was being submitted to the underwriters for evaluation. (*Id*., ¶ 27.)

On February 27, 2018, Plaintiffs contacted Ditech and were informed that their loss mitigation application had been denied and that the foreclosure sale would occur on March 1, 2018. (*Id*., ¶ 28). Plaintiffs were unable to obtain funds to pay the reinstatement amount of $8,562.79 before the foreclosure the following day and Ditech refused to postpone the sale. (*Id*. ¶¶ 30-32).

2

The property was sold to Ditech at foreclosure auction on March 1, 2018, for $90,864.44. (*Id.*, ¶ 33).

Plaintiffs filed this case alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; 12 C.F.R. § 1024.41; and bringing claims for breach of contract, promissory estoppel, and negligent misrepresentation. Defendants moved for judgment on the pleadings as to all claims.

## II. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014). "In reviewing a motion for judgment on the pleadings, we construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [him to] relief." *Id.* (internal quotation marks and citations omitted). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

In ruling on a motion under Rule 12(c), the court may look only at the "pleadings." *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 887 (M.D. Tenn. 2018). The term "pleadings" includes both the complaint and the answer, Fed. R. Civ. P. 7(a), and "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Documents

3

attached to a motion are considered part of the pleadings only if they are referred to in the plaintiff's complaint and are central to its claim. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

Defendants have included numerous exhibits with their Answer and Motion for Judgment on the Pleadings. (*See* Answer, Doc. No. 9, Exs. 1-12; Def. Mot., Doc. No. 29, Exs. 1-2). With one exception, discussed below, the Court did find cause to consider the Defendants' exhibits and has not determined whether they are appropriate for consideration on a motion for judgment on the pleadings.

### III.   ANALYSIS

**A.  RESPA and Breach of Contract Claims**

Plaintiffs claim Defendants violated RESPA regulation 12 C.F.R. § 1024.41, specifically subsections (c), (f), and (g). The regulation generally requires mortgage servicers to make decisions on loan modification requests in a timely manner and prohibits servicers from foreclosing if a mortgagor submits a complete modification application more than 37 days before a scheduled sale. 12 C.F.R. § 1024.41. Also based on the alleged RESPA violation, Plaintiffs bring a claim for breach of contract on grounds that the RESPA violation evidences a lack of good faith and fair dealing with regard to their mortgage contract.

Plaintiffs claim they submitted a complete application for loan modification on January 11, 2018, and that Defendants failed give notification of the decision within 30 days as required by subsection (c). In addition, Plaintiffs claim Defendants violated subsections (f)(2)(i) and (g) by appointing a substitute trustee and going forward with the foreclosure sale before evaluating the application.

4

Defendants argue the Plaintiffs' RESPA claim and the associated claim for breach of contract should be dismissed for two reasons:[2] (1) Plaintiffs did not submit a completed application for loan modification more than 37 days before the foreclosure sale; and (2) even if the application was complete 37 days before the foreclosure sale, the application was denied before the property was sold.

Defendants contend Plaintiffs' loan modification application was not completed until February 6, 2018, less than 37 days before the foreclosure sale. In support of this contention, Defendants refers to a document it attached as an exhibit to the Answer. (*See* Answer, Ex. I, Doc. No. 9-9). The document appears to be a facsimile of a handwritten note from Elizabeth Cole, giving permission to use her social security number for purposes of the loan application. (*Id*.). The facsimile bears a header with the date February 6, 2018. Defendants state that the loan modification application was not complete until they received this information and that the document is conclusive proof the application was not complete until February 6, 2018 – less than 37 days before the foreclosure sale.

Plaintiffs argue the Court should not consider the document because it is not part of the pleadings and has not been authenticated. In ruling on a motion under Rule 12(c), the court may look only at the "pleadings." *Doe v. Belmont Univ*., 334 F. Supp. 3d 877, 887 (M.D. Tenn. 2018). The term "pleadings" includes both the complaint and the answer, Fed. R. Civ. P. 7(a), and "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

---

[2] In their reply brief, Defendants raise two additional reasons the RESPA provisions cited by Plaintiffs do not apply: (Reply Br., Doc. No. 36 at 2, 3). First, Defendants argue that section 1024.41(f) does not apply because Plaintiffs were more than 120 days in default. (*Id*. at 2 (citing 12 C.F.R. § 1024(f)(1)). Second, they argue 12 C.F.R. 1024.41(g) does not apply because Plaintiffs defaulted on prior loan modifications. (*Id*. at 3 (citing 12 C.F.R. § 1024.41(g)(3)). The Court will not consider the merits of these arguments. Courts generally will not consider arguments raise for the first time in a reply brief because the moving party does not have an opportunity to respond. *See Speciality Hospital-Memphis, Inc. v. Trustees of Langston Co*., No. 2:19-cv-2654, 2020 WL 4275264 at *9 (W.D. Tenn. Jul. 24, 2020) (listing cases). Given the early stage of the litigation, Defendants may reassert these arguments in summary judgment where Plaintiffs will have an opportunity to respond.

5

Fed. R. Civ. P. 10(c). Here the document was attached to the answer, which is a pleading. However, the document does not appear to qualify as a "written instrument." *See* Fed. R. Civ. P. 10(c). "A 'written instrument' within the meaning of Rule 10(c) is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement. The documents that satisfy this definition consist largely of documentary evidence, specifically contracts, notes, and other writings on which a party's action or defense is based." *Steverson v. Walmart*, 2019 WL 3822179 at *2 (M.D. Tenn. Aug. 15, 2019) (finding an email attached to the complaint that does not evidence legal rights or duties or give formal expression to any legal act or agreement is not a "written instrument" for purposes of Rule 10(c)) (citing *Benzon v. Morgan Stanley Dist., Inc.*, Case No. 3:03-cv-0159, 2004 WL 62747 (M.D. Tenn. Jan. 8, 2004)).

Moreover, the document is not dispositive of any legal or factual issue. Defendants contend this document conclusively establishes that Plaintiffs' application was not complete until February 6, 2018, but that is not necessarily so. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012) (cautioning that "it is not always appropriate to assume everything in an exhibit is true."). Even if the date in the header is, in fact, the date Plaintiffs sent this fax, the existence of this document does not preclude the possibility that Plaintiffs sent the same information and completed the application on January 11, 2018, as alleged in the Complaint.

Defendant argues that even if Plaintiffs' loan medication application was complete more than 37 days before the foreclosure sale, they cannot state a claim because there is no dispute they received notice of the decision on the application before the property was sold. The Court in unconvinced this is dispositive of the RESPA claim. As alleged in the Complaint, Plaintiffs did not learn that their loan modification application was denied until February 27, 2018, a mere two

6

days before the foreclosure sale on March 1, 2018. (*See* Compl., Doc. No. 1, ¶¶ 28, 33). If, as alleged, Plaintiffs application was complete on January 11, 2018, Defendants arguably would not have commenced foreclosure proceedings, or at least would have completed the evaluation more than two days before the sale. (*See* 12 C.F.R. § 1024.41(c)(1) (requiring loan servicer to notify borrower of its determination within 30 days of receiving a complete application)).

Ultimately, the date Plaintiffs' loan application was complete requires a factual determination not appropriate for resolution on a motion for judgment on the pleadings. Construing the facts alleged in the pleadings in the light most favorable to Plaintiffs, the application was completed on January 11, 2018. Accordingly, judgment on the RESPA claim will be denied.

**B. Promissory Estoppel and Negligent Misrepresentation**

A claim for promissory estoppel requires: (1) a promise was made; (2) the promise was unambiguous and not unenforceable vague; and (3) plaintiffs reasonably relied upon the promise to their detriment. *Smith v. Bank of Am., N.A.*, 2013 WL 2139911 *2 (M.D. Tenn., May 15, 2013). Similarly, a claim for negligent misrepresentation requires: (1) defendants supplied false information to plaintiffs; (2) defendants did not exercise reasonable care in obtaining or communicating this information; and (3) plaintiffs justifiably relied on the information. *Flynn v. GMAC Mortg., LLC*, 2011 WL 4708858 *3 (E.D. Tenn., Oct. 4, 2011). A negligent misrepresentation must relate to a material past or existing fact. *Harris v. Nationwide Mutual Fire Ins. Co.*, 367 F. Supp. 3d 768, 777 (M.D. Tenn. 2019).

Plaintiffs allege that on February 2, 2018, Ditech told them "not to worry about the foreclosure sale date because it would be postponed until the Cotes' loss mitigation application was properly evaluated" and "the foreclosure sale would be postponed so that their complete loss mitigation application could be properly evaluated" (Compl., Doc. No. 1-2, ¶¶ 27, 47). Plaintiffs

7

claim they delayed seeking other sources of funding because they believed the foreclosure sale would be postponed. (*Id*., ¶ 49). Instead, the foreclosure sale was not postponed and Plaintiffs claim they received notice that their loan modification application had been denied two days before the foreclosure sale, leaving insufficient time to obtain alternative funding. (*Id*., ¶¶ 47-49).

Defendants argue Plaintiffs have not pled justifiable reliance because they were informed on February 27, 2018, their application for loss mitigation was denied, provided the opportunity to reinstate the loan, and told the foreclosure sale on March 1, 2018 (two days later), would not be postponed. (Def. Br., Doc. No. 30 at 10.) Defendants also argue that even if Plaintiffs were told the foreclosure sale would be postponed, the negligent misrepresentation claim should be dismissed because the purported misrepresentation is not one of "past or existing fact." (Reply, Doc. No. 36 at 4).

Defendants' arguments are unpersuasive. As an initial matter, the argument that Plaintiffs eventually learned that the foreclosure sale would take place on March 1, 2018, ignores the time that passed between the alleged statement on February 2, 2018, that the foreclosure would be postponed, and the statement on February 27, 2018, that is would not. Plaintiffs claim the detriment suffered as a result of their reliance on the alleged misstatement was the result of this passage of time because by the time they knew the foreclosure would go forward on March 1, 2018, it was too late to pursue other options.

Defendants' assertion that the representation that the foreclosure "would be postponed" was not of a past of existing fact, is similarly uncompelling. While Plaintiffs' imprecise choice of verb tense leaves some room for interpretation, construing the allegations in the light most favorable to them, Plaintiffs have plausibly alleged a misrepresentation of existing fact – *i.e.*, that the foreclosure was being postponed.

8

Accordingly, the Court finds Plaintiffs have sufficiently alleged plausible claims for promissory estoppel and negligent misrepresentation.

**C. Proper Parties**

Defendants move to dismiss all claims against Fannie Mae, the owner of the loan in question, arguing that the Complaint does not include any specific allegations of wrongdoing with respect to Fannie Mae and neither Ditech nor Shellpoint is an agent of Fannie Mae. (Doc. No. 30 at 6). Defendants seek to establish that Ditech is an independent contractor, not an agent by citing to the "Fannie Mae Single-Family Servicing Guide," (the "Guide") described as a "central governing document for Fannie Mae's relationship with servicers nationwide." (*Id*.). Defendant states that the Guide is available online and gives a website address where the Guide may be viewed.[3] According to Defendants, the Guide conclusively establishes that Ditech is an independent contractor.

Plaintiffs argue that whether an agency relationship existed between these parties is a question of fact that cannot be resolved on a motion for judgment on the pleadings and they have plausibly alleged the existence of an agency relationship between Ditech and Fannie Mae based on the undisputed allegation that Ditech was the mortgage servicer of the loan owned by Fannie Mae. Moreover, Plaintiffs assert that Fannie Mae's own characterization of its relationship with servicers is not dispositive of the legal nature of that relationship.

Under Tennessee law, the existence of an agency relationship "is a question of fact under the circumstances of the particular case; and whether an agency has been created is to be

---

[3] The website provided, https://www.fanniemae.com/content/guide/servicing/index.html, links to a version of the Guide with an effective date of March 2021. As the claims in this case arise out of conduct occurring at the latest in 2018, the cited Guide appears to be inapplicable. The Court also questions whether the Guide is proper for consideration on a motion for judgment on the pleadings, but Plaintiff has not objected to its consideration on this basis.

9

determined by the relation of the parties as they in fact exist under their agreement or acts." *White v. Revco Discount Drug Ctrs., Inc.*, 33 S.W.2d 713, 724 (2000). Indeed, "when the facts establish the existence of an agency relationship, it will be found to exist whether the parties intended to create one or not." *Id*.

It is undisputed that Ditech was a mortgage servicer for the loan owned by Fannie Mae. (*See* Answer, Doc. No. 9, ¶¶ 9-10). At this stage, this is enough to plausibly allege the existence of an agency relationship. Whether such a relationship in fact exists is subject to further development of the facts.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion for Judgment on the Pleadings will be **DENIED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE